CITY OF MUSKOGEE, a Municipal
Corporation, Plaintiff–Appellee,

and

Henry Sharp, Chief of Police of the
City of Muskogee,
Plaintiff/Intervenor,

v.

Mr. John MARTIN, Chairman of the Merit System Board of the City of Muskogee; Mr. D.C. Hilton, Member of the Merit System Board of the City of Muskogee; and Mr. Jack Farr, Member of the Merit System Board of the City of Muskogee, Defendants,

and

American Federation of State, County
and Municipal Employees, Local
2465, Co-defendant/Intervenor,

and

Warren D. Haworth, Intervenor below
(co-defendant in trial court),
Appellant.

No. 62692.

Supreme Court of Oklahoma.

July 17, 1990.

Gregory Meier, Lloyd Payton, Muskogee, for appellant.

Steve Cousparis, City Atty., Muskogee, for appellee.

OPALA, Vice Chief Justice.

Four issues are presented for our determination: [1] Whether the district court was the proper authority to interpret the provisions of a collective bargaining agreement when the parties had contractually agreed to submit to arbitration all disputes concerning the contract's interpretation or a term or condition of employment. [2] Whether the district court was the proper authority to declare what grievance.procedure was due a demoted police officer whose employment was covered by the agreement. [3] Whether the district court gave its declaratory judgment in the absence of a justiciable controversy and without possessing subject matter jurisdiction of the claim? and [4] Whether the district court deprived police officer Haworth of due process by granting the declaratory judgment without hearing any evidence the day the court issued its order? We answer the first two questions in the affirmative only insofar as we hold that the district court had the authority to determine if the dispute was arbitrable. Under the terms of the collective bargaining agreement, it was within the authority of the arbitration panel, not the district court, to resolve *all* disputes concerning the meaning and interpretation of that agreement. We answer the third and fourth questions in the negative.

## FACTS

Appellee, City of Muskogee [city], and the Fraternal Order of Police [FOP], Lodge No. 95, entered into a collective bargaining

agreement[1] effective July 1, 1982 through June 30, 1984. On March 23, 1984, the city's police chief demoted Appellant, police officer Warren Haworth [Haworth]. Haworth, invoking Article XVII § 14[2] of the agreement, requested a hearing before the city's merit system board [merit board]. The merit board subsequently scheduled a hearing.

Prior to the hearing, the city filed suit against the Merit Board in the District Court, Muskogee County, seeking declaratory and injunctive relief to prevent the hearing; Haworth intervened as a party defendant.[3] The city alleged a dispute between itself and Haworth concerning whether the merit board could conduct a "hearing" or a "review" of Haworth's demotion under the Merit System Rules [merit rules]. The city claimed the merit rules, as a provision of the collective bargaining agreement, constituted a term and condition of employment. As such, under Article XVII § 2[4] the city and the FOP agreed to submit to arbitration all disputes concerning the interpretation of any provision of the agreement or a term and condition of employment. The district court's temporary order restrained the merit board hearing.

Haworth challenged the subject matter jurisdiction of the district court and he contended the merit board, not the district court or an arbitration panel, was the proper forum to resolve the dispute. Haworth also contended the merit rules entitled him to a full evidentiary hearing, not merely a merit board review. After hearing the matter, the district court granted the declaratory judgment and ordered the case remanded to the merit board for a "review" rather than a "hearing".

## I. THE ARBITRATION ISSUE

■ Arbitration is the prime vehicle for resolving a dispute concerning the interpretation of a collective bargaining agreement formed under the Fire and Police Arbitration Act.[5] The legislative proclamation in 11 O.S.1981 § 51-111[6] ensures arbitra-

1. The Fire and Police Arbitration Act, 11 O.S. 1981 § 51-101 et seq. provides the statutory authority for collective bargaining agreements between firefighters, police officers and municipalities. In this appeal neither party challenged the constitutionality of the arbitration provisions of 11 O.S.1981 § 51-101 et seq. Hence, we express no opinion about their constitutional validity.

2. Article XVII, § 14 of the Collective Bargaining Agreement provides:

It is understood and *agreed* that this Article does not apply to grievances concerning promotion, demotion, suspension, dismissal, or other disciplinary action, all of which are subject to Merit Board review and which must be governed by the Merit Board Rules. (Emphasis added.)

3. The American Federation of State, County and Municipal Employees Local 2465, the bargaining agent for city employees, was also allowed to intervene as a party defendant. Henry Sharp, Muskogee Chief of Police, was allowed to intervene as a party plaintiff.

4. Article XVII, § 2 of the Collective Bargaining Agreement provides:

Any controversy between Employer and the Lodge or between the Employer and any employee concerning the interpretation, enforcement, or application of *any* provision of this Agreement, concerning *any* of the terms or conditions of employment contained in this Agreement, or concerning the actions of any of the parties to this Agreement shall be adjusted by the following manner:

*Step A:* A written grievance shall be delivered to the office of the Chief of Police, who shall deliver a written reply to the grievant within three (3) business days thereafter. If the grievance concerns the actions of some person or party not employed by the Police Department, the grievant should utilize Step B instead of this Step.

*Step B:* A written grievance shall be delivered to the office of the City Manager, who shall deliver a written reply to the grievant within three (3) business days thereafter.

*Step C:* If the grievant is dissatisfied with the *written reply of the Chief of Police or City Manager,* the grievant may deliver to said City Manager's office a written demand for arbitration. Upon delivery of said demand for arbitration, both parties shall diligently seek arbitration at the earliest possible date. (Emphasis added.)

5. See *supra* note 1.

6. 11 O.S.1981 § 51-111 describes the contents of Collective Bargaining Agreements and provides in pertinent part:

All rules, regulations, fiscal procedures, working conditions, departmental practices and

tion's use by requiring an arbitration clause in all collective bargaining agreements entered into under the Act.[7] The statute commands that any controversies over the interpretation or application of collective bargaining agreements are to have an "immediate and speedy resolution by required mediation." [8]

■ The main purpose of arbitration is to prevent court intrusion "into the merits of disputes" when there is an agreement to arbitrate disputes concerning contract interpretation.[9] For quick resolution of these disputes, the role of the district court is limited to determining whether the dispute is one that is covered by the contract.[10] In the presence of any dispute regarding the interpretation of a collective bargaining agreement, the first remedy lies with the contractually-agreed-upon arbitration, and the district court has no authority to disturb the function of arbitration.[11]

■ In the *Steelworkers Trilogy*,[12] the United States Supreme Court also expressed a federal court policy preferring arbitration. When contracting parties

agree to arbitrate questions concerning the interpretation of a collective bargaining agreement, the court's function is narrowly restricted to determine whether the party requesting arbitration asserts a "claim which on its face" is covered by the agreement.[13] The arbitrator decides if the party is "right or wrong".[14] Therefore, in the presence of an agreed-upon arbitration procedure, the arbitration forum, not the courts, is responsible for interpreting the collective bargaining agreement.[15]

■ It is, of course, within the authority of the courts to determine if a dispute is arbitrable under a collective bargaining agreement.[16] Arbitration should be allowed unless the court can say with "positive assurance" the dispute is not covered by the arbitration clause.[17] "Doubts should be resolved in favor of coverage." [18]

■ Specifically, in *United Steelworkers of America v. Warrior and Gulf Navigation Co.*,[19] an employer-union dispute arose regarding a collective bargaining agreement provision. The provision stated in

manner of conducting the operation and administration of fire departments and police departments currently in effect on the effective date of any negotiated agreement shall be deemed a part of said agreement unless and except as modified or changed by the specific terms of such agreement. Every such agreement shall contain a clause establishing mediation and fact-finding procedures for the immediate and speedy resolution and determination of any dispute which may arise involving the interpretation or application of any of the provisions of such agreement or the actions of any of the parties thereunder. In the absence of such negotiated procedure such dispute may be submitted to arbitration in accordance with the provisions of Section 51–107 through 51–110 of this title, except that the arbitration board shall be convened within ten (10) days after demand therefor by the bargaining agent upon the corporate authority or authorities. In such case the arbitration board's determination shall be final.

7. *Midwest City v. Harris,* Okl., 561 P.2d 1357, 1359 [1977] and *Taylor v. Johnson,* Okl., 706 P.2d 896, 898 [1985].

8. *Midwest City v. Harris, supra* note 7 at 1358–59; *Taylor v. Johnson, supra* note 7 at 898; and *Voss v. City of Oklahoma City,* Okl., 618 P.2d 925, 928 [1980].

9. *Voss v. City of Oklahoma City, supra* note 8 at 927.

10. *Id.* at 928.

11. *Taylor v. Johnson, supra* note 7 at 898.

12. *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 [1960]; *United Steelworkers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 [1960]; and *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 [1960].

13. *United Steelworkers of America v. American Manufacturing Co., supra* note 12, 363 U.S. at 567–68, 80 S.Ct. at 1346.

14. *Id.* 363 U.S. at 568, 80 S.Ct. at 1346.

15. *Id.* 363 U.S. at 569, 80 S.Ct. at 1347.

16. *United Steelworkers of America v. Warrior and Gulf Navigation Co., supra* note 12, 363 U.S. at 582, 80 S.Ct. at 1353.

17. *Id.*

18. *Id.* 363 U.S. at 583, 80 S.Ct. at 1353.

19. See *supra* note 12.

part, "matters which are strictly a function of management shall not be subject to arbitration under this section."[20] The agreement also contained an arbitration clause requiring arbitration of the meaning and application of the agreement.[21] The employer refused to arbitrate its action of contracting out maintenance work because it was "strictly a function of management" and not arbitrable under the agreement. The union contended that contracting out violated the agreement. The *Warrior* Court held where the collective bargaining agreement required disputes over the agreement's meaning to be resolved by arbitration and the agreement did not contain an express provision excluding contracting out from arbitration, the question of whether contracting out violated the agreement was for the arbiter rather than the courts.[22] Without an express provision in the agreement removing a certain grievance from arbitration, "only the most forceful evidence" of the parties' intent not to arbitrate a claim prevails.[23] This proves especially true in the presence of a vague exclusion clause and a broad arbitration provision.[24]

■ The dispute in the present case can be simply stated—is Haworth entitled to a merit board review or a full evidentiary merit board hearing with respect to the collective bargaining agreement, Article XVII § 14, and the merit rules?[25] Also, does Article XVII § 2's arbitration panel or the merit board have the authority to resolve this dispute?

The city and the FOP agreed to submit *any* controversy between the parties "concerning the interpretation, enforcement, or application of *any* provision of the agreement, concerning *any* of the terms or conditions of employment contained in this agreement" to a procedure concluding with arbitration.[26] In the presence of such an arbitration clause, the role of the district court was narrowly limited to determining whether the dispute over the meaning of the merit rules was covered by the agreement or whether the merit rules constituted a term and condition of employment.

The crucial inquiry is whether Article XVII, § 14 operates to include the merit rules within the collective bargaining agreement;[27] we find it does. Under § 14, the parties agreed that grievances concerning promotion, demotion, suspension, dismissal, or other disciplinary action are subject to merit board review and must be governed by the merit rules. Section 14 is a provision intentionally placed in the agreement to assure the merit rules, rather than the general grievance procedures of Article XVII, are followed in the specifically enumerated grievances. Haworth acknowledges in his brief that the FOP and city "specifically contracted" to use the merit rules in cases of demotion.[28] Also, both the city and Haworth contend the merit rules are terms and conditions of employment. In addition, Article V of the agreement incorporates all rules of the Muskogee Police Department into the

**20.** *Id.* 363 U.S. at 576, 80 S.Ct. at 1349.

**21.** *Id.*

**22.** *Id.* 363 U.S. at 584–85, 80 S.Ct. at 1354.

**23.** *Id.*

**24.** *Id.* 363 U.S. at 585, 80 S.Ct. at 1354. The court further states:
> Since any *attempt* by a *court* to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator.

**25.** The city charter was also discussed by the parties because it is the instrument that created the Merit System Board.

**26.** See *supra* note 4. (Emphasis added.)

**27.** See *supra* note 2.

**28.** Haworth's brief to this court at page 14 states in pertinent part:
> Section 14 of Article XVII specifically refers demotions to the Merit System Board. The FOP and Appellee, MUSKOGEE, specifically contracted that the subject of "demotion" is proper for Merit System Board review and the merit system's rules and regulations.

agreement.[29] It is hence clear that by specific reference in the collective bargaining agreement, the merit rules were incorporated into the agreement and became a provision of the agreement.

It may be argued that since certain grievances are subject to merit board review, the merit rules are excluded from arbitration. However, nowhere does § 14 expressly state that if a dispute arises concerning the interpretation of § 14 or the merit rules that the parties should not submit the dispute to arbitration for clarification of that section's meaning. Section 14 merely states certain types of grievances are subject to merit board review and should be governed by the merit rules. In the absence of conclusive evidence within the agreement expressly excluding the merit rules or disputes concerning the meaning of § 14 from arbitration, doubts regarding the effect of § 14 must be resolved in favor of construing the section, and the merit rules contained within, as a provision of the agreement and, hence, arbitrable. We cannot say with "positive assurance" that the parties intended through § 14 to exclude disputes over the interpretation of the merit rules from arbitration. Accordingly, we must honor the express agreement of the parties in Article XVII § 2·and the goal of 11 O.S.1981 § 51–111–disputes over the interpretation of provisions of the collective bargaining agreement should be swiftly resolved through mandatory arbitration.

Haworth does not argue against arbitration of this dispute. Instead, Haworth contends the appropriate arbitration panel for interpretation of the merit rules is the merit board rather than Article XVII § 2's arbitration panel. Resolution of this dispute requires interpretation of the collective bargaining agreement and the merit rules. It is the function of the arbitration panel, not the courts, to decide which forum should interpret the merit rules.[30]

Our teaching in *Mindemann v. Independent School District No. 6 of Caddo County*[31] does not apply to the case at hand. In *Mindemann,* the board of education voted not to renew a probationary teacher's contract and terminated another teacher's extra-duty coaching assignment. Both teachers filed grievances alleging the board's actions violated the collective bargaining agreement between the board and the district's teachers. *Mindemann* held that in the presence of a specific statute rendering final a school board's decision not to reemploy a probationary employee, the decision of the school board is not a proper subject of arbitration. A collective bargaining agreement's binding arbitration clause which contradicts such a statute is "void and unenforceable". Pursuant to the statute the school board is exclusively authorized to renew a probationary teacher's contract. Similarly, with regard to the other teacher's extra-duty coaching, the *Mindemann* court held where a specific statute confers upon school boards the task of establishing teacher's duties, the board may not agree to arbitration through collective bargaining where the consequence of such an agreement would be to supercede the board's nondelegable and sole power to fix a teacher's duties.

Clearly, *Mindemann* is distinguishable from the facts presented here. *Mindemann* deals with collective bargaining as it relates to teachers contracts and does not involve the Fire and Police Arbitration Act. Secondly, a specific statute does not exist which exclusively vests a city's merit board with the sole authority to interpret its own grievance rules and procedures. Nor does the Fire and Police Arbitration Act exclude a city's merit rules as a subject of arbitration. Thus, in the absence of a statutory mandate to the contrary, arbitration of the

---

**29.** Article V of the Collective Bargaining Agreement *Statutory Rights* provides:

All rules, regulations, fiscal procedures, working conditions, departmental practices, and manner of conducting the operations and administration of the Muskogee Police Department in effect on July 1, 1982, are hereby deemed to be a part of this Agreement, unless and except as modified or changed by the specific terms of this Agreement.

**30.** *Taylor v. Johnson, supra* note 7 at 898.

**31.** Okl., 771 P.2d 996 [1989].

meaning of the merit rules as a provision of the collective bargaining agreement would not constitute an impermissible delegation of a statutory duty which concerned us in *Mindemann*. *Mindemann* simply does not control or apply here.

The district court erred in interpreting the merit rules, which were a part of the collective bargaining agreement, and deciding Haworth was entitled to a merit board "review" rather than a "hearing". The role of the district court was restricted to determining if the merit rules were a provision of the collective bargaining agreement or a term or condition of employment under the agreement. In the presence of an agreement between the city and the FOP to submit all disputes concerning the interpretation of the agreement to arbitration, and without "forceful evidence" that disputes over the meaning of section 14 should be excluded from arbitration, it was first within the authority of the arbiter, not the district court, to resolve these disputes. Doubts regarding the arbitrability of disputes will be resolved in favor of arbitration.

## II. THE DECLARATORY JUDGMENT

 Haworth contends the district court improperly granted the declaratory judgment in the absence of a justiciable controversy and without subject matter jurisdiction of the cause. Oklahoma's Uniform Declaratory Judgments Act,[32] grants the district courts the authority to determine certain rights and relationships "in cases of actual controversy." The requirements of an actual controversy are "[a]n actual, existing justiciable controversy between parties having opposing interests that are direct and substantial...." [33]

The merit board was named the defendant in the city's original petition. The city sought to enjoin the merit board hearing and a declaration that the merit board was unauthorized to conduct the hearing. The city alleged in its petition a controversy [discussed above] existed between itself and Haworth. Later, Haworth was allowed to intervene as a party defendant. The city asserts an interest and duty to administer the police force for the public health, safety, and welfare of Muskogee. It is Haworth's position that the city alleged a dispute between itself and Haworth rather than a dispute between the city and the merit board, the original defendant.

The city has shown the presence of an "actual, existing justiciable controversy" and a "direct and substantial" interest sufficient to invoke the Declaratory Judgments Act. While initially the city brought a suit against only the merit board, Haworth later intervened as a party defendant. When the district court gave its declaratory judgment, an actual controversy existed between Haworth and the city as alleged in the petition. The city does have a "direct and substantial" interest in administering the police force.

Haworth asserts the merit board, not the district court, has jurisdiction to resolve the dispute in issue and, consequently, when the district court lacks subject matter jurisdiction it cannot enter a declaratory judgment. Haworth relies on the proposition that because a declaratory judgment is remedial in nature it may be granted only where a court "already has jurisdiction over a particular cause." [34] "It cannot extend the jurisdiction of a court where it would not exist otherwise; and if a court lacks jurisdiction over a case, it cannot enter any rightful judgment." [35]

It is true that by reason of statutory law [36] and the contractual agreement of the parties, in the presence of a dispute concerning the interpretation of a collective bargaining agreement, arbitration is the first choice for resolution. But, the district

**32.** 12 O.S.1981 § 1651 et seq.

**33.** *Gordon v. Followell,* Okl., 391 P.2d 242, 244 [1964].

**34.** *See, e.g., Conoco, Inc. v. State Dept. of Health, Etc.,* Okl., 651 P.2d 125, 131 [1982] and *Board of*

*County Commissioners of Cleveland County v. City of Norman,* Okl., 472 P.2d 910 [1970].

**35.** *Conoco, Inc. v. State Dept. of Health, Etc., supra* note 34 at 131–132.

**36.** 11 O.S.1981 § 51–111, *supra* note 6.

court does have the authority to determine if the dispute presented is arbitrable. Thus, it would be clearly erroneous to state the district court is totally without "jurisdiction" when faced with a petition requesting declaratory relief and a dispute arising under a collective bargaining agreement. The district court erred in this instance because it undertook to interpret the provisions of the collective bargaining agreement although the initial remedy was in arbitration; the district court did not err in issuing a declaratory judgment in the presence of an actual controversy where the interests were "direct and substantial".

## III. THE DUE PROCESS ISSUE

■ "The fundamental requisite of due process is the *opportunity* to be heard."[37] "It is an opportunity which must be granted at a meaningful time and in a meaningful manner,"[38] and "for [a] hearing appropriate to the nature of the case."[39] The nature of the procedural requirements necessary to satisfy due process have been further explained. "The formality and procedural requisites for a hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings."[40] "Within the limits of practicability",[41] "a State must afford to all individuals a meaningful opportunity to be heard if it is to fulfill the promise of the Due Process Clause."[42] But, "[d]ue process does not, of course, require that the defendant in every civil case actually have a hearing on the merits."[43]

The district court scheduled a hearing for June 26, 1984 and notice was sent to all remaining parties on June 14, 1984. Without stating the nature or source of his interest which triggers the due process clause,[44] Haworth contends the district court deprived him of due process by issuing its June 26, 1984 order granting declatory judgment without allowing him to present any evidence. The record contains a written order of the district court dated June 26, 1984 but reveals no transcript of any oral proceedings.

The district court did conduct a hearing on April 27, 1984 concerning Haworth's motion challenging the court's jurisdiction. During the hearing, with each party present including Haworth, the opportunity was given to present arguments regarding the court's jurisdiction. The court also entertained extensive discussion on whether Haworth was entitled to a merit board hearing or review.[45] On April 27, 1984, Haworth was twice afforded the opportunity to present evidence regarding the court's jurisdiction, but he declined.[46]

37. *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 [1914]. (Emphasis added.)

38. *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 [1965].

39. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 [1950].

40. *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 [1971].

41. *Mullane v. Central Hanover Bank & Trust Co., supra* note 39, 339 U.S. at 318, 70 S.Ct. at 659.

42. *Boddie v. Connecticut, supra* note 40, 401 U.S. at 379, 91 S.Ct. at 787.

43. *Id.* 401 U.S. at 378, 91 S.Ct. at 786.

44. U.S. Const. amend. XIV, § 1 provides in pertinent part:
 ... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

45. After extensive review of the record, it is noted that the issues of the district court's jurisdiction and the dispute concerning the collective bargaining agreement were the primary issues in the lower court. Both issues were discussed during the April 27, 1984 hearing.

46. Haworth declined to present evidence, arguing the city carried the burden to prove jurisdiction. Haworth relied on *Jim Marrs Drilling Co., Inc. v. Woolard,* Okl.App., 629 P.2d 810 [1981]. At the conclusion of the city's jurisdictional argument Haworth demurred. A close reading of *Marrs* reveals Haworth's reliance on the case was improper and *Marrs* is clearly distinguishable from the facts in the case at hand. The *Marrs* court held the petition did not contain sufficient facts, rather, only "mere legal conclusions" which are insufficient to support the

The apparent failure of the district court to allow the parties to present oral testimony and evidence on June 26, 1984 did not deny Haworth of his opportunity to be heard "at a meaningful time and in a meaningful manner". During the previous hearing on April 27, 1984, Haworth was given ample opportunity to advance his position on the pertinent issues before the district court. To assure due process is afforded, it is the court's responsibility to provide the parties with a meaningful opportunity to be heard. The court cannot compel parties, such as Haworth, to embrace these opportunities if they refuse.

Judgment of the district court is accordingly reversed and cause remanded with directions to submit to arbitration the disputes about the interpretation of the merit rules, insofar as it is alleged that they constitute a provision of the collective bargaining agreement. The initial question for arbitration is whether the merit board or the arbitration panel contemplated by Article XVII § 2 should interpret the merit rules. If the latter, then the chosen arbitration panel should, upon interpreting the collective bargaining agreement and its provisions, which include the merit rules, decide whether Haworth is entitled to a hearing or a review and the scope of the procedure to be accorded.

HARGRAVE, C.J., LAVENDER and DOOLIN, JJ., and JOHNSON, S.J., (sitting by designation in lieu of SUMMERS, J., who certified his disqualification), concur.

KAUGER, J., concurs in part and dissents in part.

HODGES, J., with whom ALMA WILSON, J., joins, and SIMMS, J., dissenting.

HODGES, Justice, dissenting.

Today's pronouncement reverses the judgment of the trial court and remands the cause with directions to submit the dispute over interpretation of the merit rules to an arbitrator. I must dissent because, by its own terms, the collective bargaining agreement between the police un-

ion and the city does not apply to the merit system.

The collective bargaining agreement between the city and its police officers specifically excludes certain grievances from arbitration. Article 17, section 14 of the agreement provides:

> It is understood and agreed that this article does not apply to grievances concerning promotion, *demotion*, suspension, dismissal, or other disciplinary action, all of which are subject to Merit Board review and which must be governed by the Merit Board Rules.

(emphasis added). Thus, the parties agreed that the merit board would be the entity responsible for reviewing demotions.

Because demotion was excluded from arbitration, clearly the merit rules governing demotion were also excluded from arbitration. Nevertheless, the majority goes on to hold that the merit rules were somehow incorporated by reference into the collective bargaining agreement and that an arbitrator must construe the merit rules to determine the scope of merit board review.

The authority cited for this conclusion is article 17, section 14, of the collective bargaining agreement which *excludes* demotions from the agreement's grievance procedure and makes them subject to the merit rules. Under article 17, section 2, of the agreement, the grievance procedure applies to "terms or conditions of employment *contained in this Agreement.*" (emphasis added). The merit rules were not contained in the agreement. It does not seem reasonable that a contract provision excluding certain subjects from the grievance procedure can serve as authority for the notion that the excluded procedure (the merit system) was incorporated into the collective bargaining agreement.

The merit board should decide whether the officer was entitled to a merit board review or a full evidentiary hearing under the merit rules. A party aggrieved by the merit board's interpretation of its rules could then pursue the matter in district court. But the interpretation of the rules

court's jurisdiction over a non-resident. Our case does not involve a non-resident or an insuf-

ficiently plead petition to challenge the jurisdiction of the district court over a non-resident.

should initially rest with the merit board rather than an arbitrator.

The majority's resolution of the case does not give effect to the intent of the parties as reflected by both the collective bargaining agreement and the city's past practice of affording a merit board hearing to any demoted officer who requested one. The parties clearly intended to exclude demotions from the bargaining agreement's grievance process. The merit rules are not "terms or conditions of employment contained in [the] Agreement" and are not subject to arbitration.

Additionally, the majority approach does not provide the speediest mechanism for addressing the merits of an officer's demotion. The board should determine the scope of its review under the merit rules and address the merits of an officer's demotion. The scope of review decision could then be challenged in district court. The merits of the demotion should not have to await an arbitrator's construction of the rules.

The merit board was created by city charter to deal with this type of employee dispute. Pursuant to its charter, the city delegated the enforcement and interpretation of the merit rules to the merit board. Nothing in the collective bargaining agreement evidences an intent to remove these duties from the board and reassign them to an arbitrator. The merit board should be allowed to interpret its own rules.

I am authorized to state that Justice ALMA WILSON joins in the views herein expressed.