**FERGUSON PONTIAC–GMC, INC.,**
a corporation, Appellee,

v.

**Gerald J. HENSON, Appellant.**

No. 84247.

Court of Appeals of Oklahoma,
Division No. 1.

Dec. 20, 1994.

Gerald J. Henson, pro se.

Charles E. Wetsel, Oklahoma City, for appellee.

## MEMORANDUM OPINION

JONES, Judge:

Appellant Gerald Henson purchased a car from Appellee Ferguson Pontiac–GMC, Inc. on July 1, 1993. Henson gave the dealership an $800 down payment and executed a retail installment sales contract and security agreement for the remainder of the purchase price. Appellee assigned the contract to a Norman bank. When Appellant failed to make payments on the car, the bank reassigned the contract to Appellee, and Appellee then sued to replevin the car and to collect the outstanding debt.

Appellee moved for summary judgment based upon the Henson's answer, in which he admitted execution of the sales contract and security agreement, and upon the affidavit of Appellee's controller that Henson had failed to keep up the payments on the contract. Appellant's response to the motion consisted of a "Notice of Criminal Complaint and Demand for Settlement Conference," addressed to the trial court and to Appellee's attorney, in which Henson purported to place various officers and employees of Appellee and the bank, and Appellee's attorney, under citizen's arrest for conspiring to deprive him of his constitutional rights.

The crux of Henson's argument to the trial court (pruning away the considerable surplusage) rests on the contention that a third party satisfied his debt. After making two payments, Henson requested a payoff balance from the bank. Shortly thereafter, the bank received a "certified money order" for $8,330.00 issued by one "L.A. Pethahiah" in Wisconsin. When the bank submitted this item to the issuer for collection, it received in response a "certified banker's check" drawn by "Leonard Peth" in equal amount.[1] The

---

1. The "banker's check" was accompanied by a letter signed by "Leonard Peth," which stated in part:

"Please, find a Certified Banker's check number 93–1003095 in the amount of $8,330.00 for the redemption of the Certified Money Order (C.M.O.), presented according to the Uniform Commercial Code pursuant to the endorsed agreement upon the C.M.O. with Gerald J. Henson. According to U.C.C. your

bank returned this "check" to Mr. Peth[ahiah],[2] stating, "This is not considered a cash item; therefore, we cannot use it to pay off a loan," and requested a cashier's check or wire transfer. Peth[ahiah] wrote back to the bank, expressing his disdain for the bank's refusal to accept his "check";[3] with the letter Peth[ahiah] enclosed the item marked "Paid in Full."

Henson lists five "causes of appeal" in his petition in error: (1) the judges of the trial court have "ignored [his] efforts to preserve status [*sic*] as a constitutional citizen of the State of Oklahoma"; (2) his request for jury trial was denied; (3) the trial court violated the Declaratory Judgment Act, 12 O.S.1991 §§ 1651–57, by refusing his requests to define "legal tender"; (4) the trial court failed to "address or acknowledge" his evidence of payment (i.e., the Peth[ahiah] items); and (5) the trial court lacked authority to compel him to pay his debt to Appellee "with anything other than gold or silver coin."[4]

■ Henson does not elaborate his first allegation of error except to say that he "has throughout this case refused to submit to the jurisdiction of the [trial court] operating in its federal capacity as a court of summary judgment in lieu of its capacity as a court of law in and for the State of Oklahoma." Clearly, though, Henson waived any challenge to the trial court's in personam jurisdiction when he failed to raise the issue in his answer,[5] and we find nothing in the record to suggest the trial court lacked jurisdiction over the subject matter.[6]

■ Henson's second point is patently unfounded. By definition, summary judgment may be granted only when there is no triable issue of fact. Rule 13(a), (e), Rules for District Courts, 12 O.S.1993 Supp., Ch. 2, App. The absence of a triable issue for the jury forecloses any consideration of the argument that Henson was unlawfully deprived of his right to jury trial under Art. II, § 19, of the Oklahoma Constitution (or the Seventh Amendment of the United States Constitution). *See Charles F. Curry Co. v. Goodman,* 737 P.2d 963, 964 (Okla.App.1987). "The trial court does its duty when summary judgment is granted and a needless jury trial is denied when the material facts in issue are undisputed and the applicable law justifies the action." *Id.,* citing *Will v. Jones,* 463 P.2d 702 (Okla.App.1969).

■ Appellant's third point is similarly without merit. The Declaratory Judgment Act grants to district courts the authority to determine certain rights and relationships "in cases of actual controversy." An actual controversy is "[a]n actual, existing justiciable controversy between parties having opposing interests that are direct and substantial...." *City of Muskogee v. Martin,* 796 P.2d 337, 343 (Okla.1990); *see Gordon v. Followell,* 391 P.2d 242, 244 (Okla.1964). Henson pressed no claim for declaratory relief in the trial court, and there is no record before us to show that he made any such request of the trial court. Moreover, merely asking the court to define "legal tender" does not constitute a request for declaratory judgment.

---

letter signature by accommodation (your collection letter) U.C.C. 3–415, has endorsed the instrument, supra."

2.  The correspondence is written on stationery with an address block showing "L.A. Pethahiah," but is signed in both instances by "Leonard Peth."

3.  Typical of the content and tone of Peth[ahiah]'s letter is its ultimate sentence: "Just who are you to tell We the People how the People are to do their individual business in a private manner?"

4.  We note that with his petition in error Henson filed a booklet written by David H. Friedman entitled "I Bet You Thought ...," apparently issued through the Federal Reserve Bank of New York. The booklet is not part of the record in

this accelerated docket case, *see* Rule 1.203(A)(1), Rules of Appellate Procedure, 12 O.S.1993 Supp., Ch. 15, App. 2; Rule 13(h), Rules for District Courts, 12 O.S.1993 Supp., Ch. 2, App., and we do not consider it in resolving the issues presented by this appeal.

5.  The defense of lack of in personam jurisdiction is waived if not raised in a responsive pleading or by prior motion. 12 O.S.1993 Supp. § 2012(F)(1).

6.  Subject matter jurisdiction may be questioned in the trial court at any time, "by suggestion of the parties or otherwise." *See* 12 O.S.1993 Supp. § 2012(F)(3).

We shall discuss the fourth and fifth points together. Henson contends on the one hand that the money order and/or check from Peth[ahiah] constituted a sufficient tender of payment (or, as he says, "payment in kind") for his debt, but Henson also contends he could not be compelled to pay his debt except in gold or silver coin. These disparate contentions are knit together by Henson's assertion (explicit in his petition in error, but only implicit in his trial court filings) that Sections 8 and 10 in Article I of the United States Constitution [7] define gold or silver coin as the only "constitutionally legitimate 'legal tender' money." So far as we can tell, arguments such as this have been rejected every time they have been advanced, commencing with the Legal Tender Cases of the nineteenth century. *Legal Tender Cases [Juilliard v. Greenman]*, 110 U.S. 421, 4 S.Ct. 122, 28 L.Ed. 204 (1884), *Legal Tender Cases [Knox v. Lee]*, 79 U.S. (12 Wall.) 457, 20 L.Ed. 287 (1871). We agree with the Fifth Circuit that any such argument at this point is "hopeless and frivolous." *Foret v. Wilson*, 725 F.2d 254, 254 (5th Cir. 1984).[8]

The "check" sent by Peth[ahiah] to the bank was not a check at all because it was not drawn on a bank. 12A O.S.1991 § 3–104(2)(b). Despite Peth[ahiah]'s notation on the "check," there is no evidence in the record to show that Peth[ahiah] ever paid the item he sent to the bank, or ever tendered any money to the bank on Henson's behalf. *Cf.*, 12A O.S.1991 § 1–201(24) (defining *money* as "a medium of exchange authorized or adopted by a domestic or foreign government as a part of its currency"). The mere notation of "payment in full" on the face of the "check" does not constitute "payment in kind," or, in fact, payment of *any* kind.

Once a moving party has made a prima facie showing under our summary judgment procedure that no substantial controversy exists regarding the material facts, the burden shifts to the opposing party to demonstrate the existence of a triable issue of fact. *Hargrave v. Canadian Valley Elec. Co-op., Inc.*, 792 P.2d 50, 55 (Okla.1990); *Stephens v. Yamaha Motor Co.*, 627 P.2d 439, 441 (Okla. 1981). After reviewing the evidentiary materials in the record, we hold that Henson failed to create a substantial controversy as to any material fact. The trial court correctly entered summary judgment for Appellee.

The trial court judgment is AFFIRMED.

HANSEN, P.J., and JOPLIN, J., concur.

---

7. Article I, § 8 provides in part:
   "The Congress shall have Power ... [t]o coin Money, [and to] regulate the Value thereof ..."
   Article I, § 10, provides in part:
   "No State shall ... coin Money ... [or] make any Thing but gold and silver Coin a Tender in Payment of Debts ..."

8. Indeed, when Peth[ahiah] made the same argument in a tax protest case, the court characterized it as "silly." *See Peth v. Breitzmann*, 611 F.Supp. 50, 54 (E.D.Wis.1985).