2010 OK CIV APP 116

Chris COOK, Richard Bercher, Tony Newsom and Derick Pickard, individually, and all other similarly situated police officers, Plaintiffs/Appellants/Counter–Appellees,

v.

CITY OF EDMOND, Defendant/Appellee/Counter–Appellant.

Nos. 107,463, 107,469.

Court of Civil Appeals of Oklahoma, Division No. 4.

June 29, 2010.

Certiorari Denied Oct. 11, 2010.

James R. Moore, Sue Wycoff, Moore & Vernier, P.C., Oklahoma City, OK, for Appellants.

Andrew W. Lester, George S. Freedman, Lester, Loving & Davies, P.C., Edmond, OK, for Appellee.

JERRY L. GOODMAN, Judge.

¶ 1 City of Edmond (City) appeals the trial court's July 28, 2009, final judgment which granted Police Officers' Chris Cook, Richard Bercher, Tony Newsom, and Derick Pickard (collectively "Officers") Title 40 O.S.2001 and Supp. 2005, § 165.1 *et seq.* wage claim. Officers also appeal, asserting the trial court applied the incorrect statute of limitation.

Based upon our review of the facts and applicable law, we reverse and remand with directions.[1]

## FACTS

¶ 2 Officers filed a petition on August 11, 2003, asserting a claim for back wages pursuant to Title 40 O.S.2001 and Supp. 2005, § 165.1 *et seq.* Officers asserted their Collective Bargaining Agreement (CBA) with the City established their standard workweek was 42.5 hours, although the City only compensated them for 40 hours. In February of 2004, the trial court certified the class as all uniformed officers employed with the City after August 11, 1998.

¶ 3 On June 6, 2005, Officers filed a motion for partial summary judgment on the issue of liability. Officers asserted the CBA required officers to work 42.5 hours a week. Officers contended that in addition to an 8 hour work shift, all officers are required to report to work 15 minutes before the shift starts and to remain on-duty and be available for dispatch for 15 minutes after the shift ends. Although officers are required to be at work and on-duty for 15 minutes before and after the shift, thus working 8.5 hours a day and 42.5 hours a week, supervisors only enter 8 hours a day and 40 hours a week on time sheets. Thus, Officers are not compensated for the additional 2.5 hours they work.

¶ 4 City responded and filed its own motion for summary judgment on August 31, 2005, which it supplemented on September 2, 2005, and April 7, 2006. City asserted it pays Officers according to the CBA's terms, which sets forth a "standard work week," not the "hours of work" for each Officer. City contended § 11.2 of the CBA was established to set a threshold for overtime, not a promise to pay additional wages, and was in response to *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).[2] City asserted an officer's hours of work is reduced by his use of personal time, vacation, sick leave, *et seq.*, and officers generally work 35 hours per week, although they are paid for 40 hours. City noted the CBA grants an officer 1.5 hours of personal time each day for lunch and 2 breaks, which it is not obligated to pay, and an officer may utilize this time for personal activities. The only restrictions placed on officers are to remain in city limits, be available to respond if needed, monitor the radio, remain with their patrol cars, and remain in uniform. With respect to the 15 minutes before and after their shifts, City asserted officers are permitted to attend to the same personal activities as during their breaks. City contends the extra 5 hours of pay a week covers the rare situation when an officer is dispatched during this time.[3]

¶ 5 City further cited the *Evans Grievance*, asserting the Fraternal Order of Police had agreed in 1993 the CBA did not require payment of 42.5 hours of wages. In 1993, then Fraternal Order of Police President Joe Evans filed a grievance asserting he was not compensated for the 15 minute pre- and post-shift time. The CBA in 1992–1993 had a 40 hour work week and had eliminated provisions requiring the City to provide meal and break periods.[4] The Fraternal Order of Police and City ultimately settled the grievance,

1. City's Motion to Strike Officers' Reply Brief is granted.

2. Garcia required state and local governments to comply with the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* In response, Congress enacted several provisions to reduce public employers' concerns. Title 29 U.S.C. § 207(k), although originally passed in 1974, permitted state and local governments to elect alternative overtime thresholds for police and fire personnel in excess of 40 hours. City asserts § 11's predecessor, Article 10, § 2, changed the standard work week from 40 to 42.5 hours to take advantage of the exemption and that it was not a promise to pay officers for 42.5 hours of work. *See* 29 U.S.C. § 207(k).

3. City asserts it pays Officers for 40 hours of work a week. Officers have 1.5 hours of personal time a day × 5 days = 7.5 hours a week. 42.5 − 7.5 = 35 hours a week. 40 − 35 = 5 hours extra pay a week.

4. The 1992–1993 CBA was the only contract year since 1987 that contained a "standard work week" other than the 42.5 hours at issue in the present case. As a result, the *Evans Grievance* sought not only regular pay for the 2.5 hours but also overtime because the CBA did not include the § 207(k) election.

agreeing the officers were paid correctly. City asserted the parties to the 1993–1994 CBA, which was negotiated while the *Evans Grievance* was pending, memorialized the parties' intent that no additional pay would be required in the future. City contends after these negotiations, the parties have operated under the same CBA for ten years without complaint until this suit and that the parties' conduct in carrying out the CBA establishes the parties' intent. Finally, City asserted Officers failed to present any evidence to prove they actually worked more than 40 hours per week entitling them to additional pay.

¶ 6 On September 15, 2005, Officers filed an application to hold the motions for summary judgment in abeyance pending arbitration. Officers asserted their bargaining agent, the Fraternal Order of Police Lodge 136(FOP), had filed a contract grievance.[5] City objected, asserting the grievance had no impact on the present case, a Title 40 claim, and regardless of how the arbitrator decided the grievance, the trial court would still be required to determine whether Officers actually worked more hours than they were paid and that this was exclusively for the court's determination.

¶ 7 The trial court ultimately granted Officer's motion, holding the summary judgment motions in abeyance pending arbitration. On November 16, 2005, City filed an application to assume original jurisdiction and petition for writ of prohibition with the Oklahoma Supreme Court, requesting the Court order the trial court to proceed with the litigation pending below. The Supreme Court agreed and issued the writ, directing the trial court to hear and determine the parties' cross motions for summary judgment without undue delay.

¶ 8 On July 7, 2006, later memorialized by order filed on December 7, 2006, the trial court issued a letter denying City's motion for summary judgment and granting Officer's motion for partial summary judgment, finding the CBA clearly states the regular work week is 42.5 hours. However, the court found City does not pay Officers for the

additional 15 minutes pre- and post-shifts per day required to be on duty in violation of 40 O.S.2001, § 165.9.

¶ 9 Also on July 7, 2006, the arbitrator issued his ruling, denying the grievance. The arbitrator noted that nothing in the CBA states there is an 8.5 hour work day or a 42.5 hour work week minimum pay guarantee. Rather, "Article 11.2's only specific time reference is 42.5 hours, Saturday to Saturday, in a clause that does not mention pay."

¶ 10 The arbitrator further found the *Evans Grievance* compelling. When the *Evans Grievance* arose, FOP understood that before the 1992–1993 Article 11 contract changes, the 15 minutes pre- and post-shift periods were included in the work day and were not compensated; the settlement returned to the pre 1992–1993 language with FOP assurance the dispute was over; and 1993–1994 negotiations retained the settlement language that survives today.

¶ 11 Finally, the arbitrator stated it was "unnecessary to say if the pre and post 15 minute periods are compensable by themselves or if meal/break times within the shift are paid or deducible. However characterized, the current pay calculation results from an express and established bargain. The Board is obliged to enforce it."

¶ 12 Thereafter, City filed a motion to reconsider or in the alternative a motion to certify an interlocutory appeal, asserting the arbitrator was vested with preclusive authority to interpret the CBA and because the CBA formed the only basis for the court's finding of unpaid work, the court's decision must be reconsidered. The trial court denied the motion on December 7, 2006.

¶ 13 On November 29, 2007, City filed a second motion for summary judgment, asserting the trial court lacked subject matter jurisdiction because Officers failed to comply with the Governmental Tort Claims Act (GTCA), 51 O.S.2001, § 151 *et seq.* The court denied City's motion.

¶ 14 On January 7, 2008, Officers filed a second motion for partial summary judg-

---

5. The FOP filed the grievance on September 14, 2005, asserting City breached Article 11 of the

CBA by failing to pay officers for all compensable work-time contrary to the CBA's plain language.

ment, requesting prejudgment interest. On January 25, 2008, City filed a motion asserting the statute of limitations was 3 years. The trial court ultimately ruled Officers were entitled to prejudgment interest and the proper statute of limitations was 3 years.

¶ 15 In June of 2008, City filed an offer of proof. Officers objected, asserting it was inappropriate because there had never been a trial, *inter alia*. Officers ultimately withdrew their objection. The parties entered into stipulations and final judgment was entered on July 28, 2009. Officers were subsequently awarded an attorney's fee. Both parties appealed and appeals were consolidated under surviving appeal No. 107,463.

## STANDARD OF REVIEW

¶ 16 Summary judgment is used to reach a final judgment where there is no dispute as to any material fact, and where one party is entitled to judgment as a matter of law. *Indiana Nat'l Bank v. Department of Human Servs.*, 1993 OK 101, ¶ 10, 857 P.2d 53, 59; *Sellers v. Oklahoma Pub. Co.*, 1984 OK 11, ¶ 23, 687 P.2d 116, 120. We review a grant of summary judgment *de novo. Young v. Macy*, 2001 OK 4, ¶ 9, 21 P.3d 44, 47. In a *de novo* review, we have plenary, independent, and nondeferential authority to determine whether the trial court erred in its application of the law. *Id.*

## ANALYSIS

¶ 17 Before addressing the merits of either parties' propositions of error on appeal, this Court must first address Officers' assertion City may only appeal the denial of its' motion to reconsider because City did not file the motion within 10 days of the order granting Officers' motion for partial summary judgment on the issue of liability. Officers further assert City waived or abandoned appeal of the denial of its motion to reconsider by failing to address it in its brief on appeal.

¶ 18 City disagrees, asserting the summary judgment ruling was an intermediate, non-final order which remained under the trial court's plenary control until the controversy ended. City notes the issue of damages remained before the court.

¶ 19 The July 7, 2006, letter ruling granting Officers' motion for partial summary judgment, later memorialized by order on December 7, 2006, was addressed solely to the issue of liability. Issues remained pending in the suit. Thus, the decision did not rise to the level of a judgment pursuant to 12 O.S.2001, § 681. "No judgment may arise from a ruling that disposes of but a portion of an entire claim and leaves unresolved other issues joined by the pleadings." *LCR, Inc. v. Linwood Prop.*, 1996 OK 73, ¶ 9, 918 P.2d 1388, 1393. Accordingly, City's appeal is proper.

¶ 20 The parties assert several propositions of error on appeal. However, one proposition of error has merit and warrants reversal of the trial court's July 28, 2009, final judgment.

¶ 21 City contends the trial court did not have the authority to ignore and reject the arbitrator's decision and supplant its own interpretation of the CBA. Thus, the final judgment must be reversed.

¶ 22 Officers disagree, and contend this case is a claim for unpaid wages authorized by 40 O.S.2001 and Supp. 2005, § 165.1 *et seq.*, not a breach of contract claim. Officers do assert, however, their claim is based on a "written contract that requires the Officers to be on duty 42.5 hours per week," *i.e.*, the CBA with City. A copy of the CBA was attached and referred to in their Petition. Officers agree the issue of interpreting the CBA resides with the arbitrator, although they assert the issue of whether City violated Title 40 properly resided with the trial court.

¶ 23 The Fire and Police Arbitration Act (FPAA), 11 O.S.2001, § 51–101 *et seq.*, requires the "determination of any dispute which may arise involving the interpretation or application of any of the provisions of such agreement or the actions of any of the parties thereunder" be submitted to final and binding arbitration. *See* 11 O.S.2001, § 51–111.

"[t]he Fire and Police Arbitration Act, 11 O.S.1991 § 51–101 et seq. provides the

statutory authority for collective bargaining agreements between firefighters, police officers and municipalities." *City of Muskogee v. Martin,* 1990 OK 70, ¶ 2, 796 P.2d 337, 339 n. 1. Under the Act, "[a]rbitration is the prime vehicle for resolving a dispute concerning the interpretation of a collective bargaining agreement." *Id.* at ¶ 5, 796 P.2d at 339.

> [F]or quick resolution of these disputes, the role of the district court is limited to determining whether the dispute is one that is covered by the contract. In the presence of any dispute regarding the interpretation of a collective bargaining agreement, the first remedy lies with the contractually-agreed-upon arbitration, and the district court has no authority to disturb the function of arbitration.

*City of Warr Acres v. The Int'l Assoc. of Firefighters, Local No. 2374,* 2002 OK CIV APP 124, ¶ 6, 64 P.3d 1118, 1121 (citations omitted).

¶ 24 The main purpose of arbitration is to prevent court intrusion into the merits of disputes when there is an agreement to arbitrate disputes concerning contract interpretation. *City of Warr Acres,* 2002 OK CIV APP 124, at ¶ 6, 64 P.3d at 1121. "The function of the court is generally limited to ascertaining whether the party is making a claim which is governed by the contract when the parties have agreed to submit all questions of contract interpretation to an arbitrator." *Taylor v. Johnson,* 1985 OK 69, ¶ 5, 706 P.2d 896, 898. "Any question regarding the application and interpretation of the CBA is subject to arbitration, and the district court is without jurisdiction to usurp this function." *Id.* at ¶ 6, 706 P.2d at 898. Arbitration should be allowed unless the court can say with "positive assurance" the dispute is not covered by the arbitration clause. *City of Warr Acres,* at ¶ 6, 64 P.3d at 1121. "Doubts should be resolved in favor of coverage." *City of Muskogee v. Martin,* 1990 OK 70, ¶ 8, 796 P.2d 337, 339–340.

¶ 25 City and FOP are parties to a CBA. Officers are not a party to the CBA but are beneficiaries of its terms. *City of Warr Acres,* 2002 OK CIV APP 124, at ¶ 2, 64 P.3d at 1120. Article 10 sets forth the grievance procedure and incorporates the FPAA's arbitration requirements. Article 10, Section 10.2 provides a grievance is any dispute on any issue over the "meaning, interpretation, application or alleged violation of the terms and provisions" or "alleged violation of policies and procedures of the Edmond Police Department." A grievance is subject to the grievance procedure outlined in Article 10, including binding arbitration. Either the FOP or any officer may file a grievance.

¶ 26 In the present case, the trial court was presented with a Title 40 wage claim which required the court to interpret and apply the CBA. In granting Officers' motion for partial summary judgment, the court clearly interpreted and applied provisions of the CBA, ultimately rendering a decision finding City liable for the additional wages. Pursuant to the CBA and the FPAA, the appropriate remedy lies first with the contractually agreed upon arbitration. Although the trial court has the authority to determine a Title 40 wage claim and whether a dispute is arbitrable, it does not have the authority to determine the "meaning, interpretation, application or alleged violation of the terms and provisions" of the parties' CBA when the parties have contractually agreed otherwise. The fact Officers filed a claim pursuant to Title 40 does not alter this finding. Any doubt should be resolved in favor of coverage. The trial court did not have authority to usurp the function of arbitration.[6]

¶ 27 Accordingly, once the trial court determined Officers' Title 40 wage claim involved an interpretation and application of the CBA, the trial court had a duty to submit the dispute to binding arbitration. It erred in failing to do so. The trial court did, however, correctly stay the proceedings upon

---

**6.** Title 40 O.S.2001 and Supp. 2005, § 165.1 *et seq.* merely provides a procedural mechanism for employees to seek redress when an employer fails to pay wages for work actually performed. It does not provide a substantive right to wages in addition to those provided in an agreement, such as the CBA, between an employee and employer. See *Reynolds v. Advance Alarms, Inc.,* 2009 OK 97, 232 P.3d 907; 40 O.S.2001 and Supp. 2005, § 165.1 *et seq.*

learning of FOP's grievance filing and the pending arbitration.

¶28 The trial court further erred in failing to grant City's motion to reconsider the court's interlocutory order granting Officer's motion for partial summary judgment. A grievance was properly filed by FOP, as Officers' bargaining agent, pursuant to the CBA. FOP did not seek a decision on Officers' Title 40 claim. After considering the CBA and evidentiary material presented by the FOP and City, the arbitrator denied the grievance. Neither party appealed the arbitrator's decision. The decision was therefore final and binding on the parties, including Officers. Upon presentation of the arbitrator's decision to the trial court, the court was obligated to revisit its interlocutory summary adjudication and reconsider whether Officers' Title 40 wage claim was viable based on the arbitrator's interpretation of the CBA.

### CONCLUSION

¶29 Accordingly, the trial court's July 28, 2009, final judgment is reversed and the matter remanded to the trial court for further proceedings. The trial court is directed to determine whether Officers are entitled to wages pursuant to Title 40 consistent with the arbitrator's interpretation of the CBA. Because of our resolution of this issue, we need not address the remaining issues on appeal. However, the parties are free to reassert the issues on remand.

¶30 REVERSED AND REMANDED WITH DIRECTIONS.

GABBARD, P.J., concurs; RAPP, J., not participating.